# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1666

_____

United States of America,    *
               *
    Plaintiff - Appellee,   *
               * Appeal from the United States
  v.             * District Court for the Western
               * District of Missouri.
Paul David Anderson,    *
               *
    Defendant - Appellant.  *

_____

Submitted: January 9, 2006
Filed: March 16, 2006

_____

Before LOKEN, Chief Judge, HANSEN and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Paul David Anderson was a church leader involved in the sale of legitimate, insurance-related investment products. Through these channels of introduction, he gained the trust and personal financial information of twenty-two older people whom he eventually defrauded in a complex investing scheme. Through the fraudulent scheme, he caused the twenty-two victims to lose a combined total of more than one million dollars. Some of the victims lost their entire life savings.

A jury convicted Anderson of forty-nine counts of mail fraud, money laundering, and engaging in transactions with property derived from unlawful activity under 18 U.S.C. §§ 1341, 1956(a)(1)(A) and 1957. At sentencing, the court imposed enhancements for use of sophisticated means, abuse of a position of private trust, and exploitation of a large number of vulnerable victims. The court then imposed a sentence of sixty months on the first forty-one counts and 108 months on the remaining eight counts, all to run concurrently.

In a prior appeal, we upheld findings that supported the abuse-of-trust and sophisticated means enhancements. United States v. Anderson, 349 F.3d 568, 571, 574 (8th Cir. 2003). We determined, however, that the sentencing court's findings were insufficient to permit our review of the vulnerable victims enhancements. Id. at 573. Accordingly, we remanded for resentencing with instructions for the court to make specific findings as to two issues: first, whether any victims of the offenses were "unusually vulnerable victims" under U.S.S.G. § 3A1.1(b)(1); and second, if there were any unusually vulnerable victims, whether there was a "large number of unusually vulnerable victims" to justify an additional enhancement under U.S.S.G. § 3A1.1(b)(2).

While the case was on appeal, Anderson filed liens against the property of the original sentencing judge.[1] Following our remand, the original judge recused himself, and the case was assigned to a different district court judge.[2] During resentencing, the court heard testimony from numerous witnesses and expressly found that at least thirteen of the victims were unusually vulnerable. The court stated that if the two-level enhancement of U.S.S.G. § 3A1.1(b)(1) (for at least one unusually vulnerable

[1]The State of Missouri brought felony charges against Anderson for filing the liens, but it appears that Missouri has dropped the charges.

[2]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

victim) applied, the applicable advisory Guidelines range would be 87-108 months. The court also stated that if the additional two-level enhancement of U.S.S.G. § 3A1.1(b)(2) (for a large number of unusually vulnerable victims) applied, the applicable advisory Guidelines range would be 97-121 months. The court then stated that the advisory Guidelines were "inadequate and insufficient to adequately identify [Anderson's] conduct." The court imposed a sentence of sixty months on the first forty-one counts and the statutory maximum sentence of 120 months on the last eight counts, all to run concurrently.

On appeal, Anderson argues that the higher sentence he received during resentencing following his initial appeal is an impermissible, vindictive sentence intended to punish him for having exercised his right to appeal. He also challenges the district court's findings as to unusual vulnerability, arguing that none of the victims were unusually vulnerable. In this regard, he presents factual arguments based on the victims' ages, levels of education, job experiences, and/or investment experiences. Regarding interpretation of the Guidelines, he claims that the district court impermissibly "double dipped" by relying on the same facts to assess the abuse-of-trust and vulnerable victim enhancements. Further, he argues that even if one or more of the victims were unusually vulnerable, there were not enough unusually vulnerable victims to comprise a large number for the purpose of U.S.S.G. § 3A1.1(b)(2). Finally, he argues that his sentence is unreasonable in light of United States v. Booker, 543 U.S. 220 (2005), and the 18 U.S.C. § 3553(a) factors. We affirm.

## I. Vindictive Sentencing

In North Carolina v. Pearce, 395 U.S. 711, 723 (1969), the Supreme Court held that the imposition of a more severe sentence following retrial or resentencing was, in general, permissible. The Court held, however, that an increased sentence motivated by vindictiveness on the part of a sentencing judge was impermissible and

a significant violation of a defendant's due process rights.  Id. at 725.  The Court articulated a presumption of vindictiveness and imposed a duty on sentencing courts to fully explain more severe sentences:

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.  And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Id. at 726.  The Court did not discuss the impact that the use of a different sentencing judge might have on the analysis.  See  Texas v. McCullough, 475 U.S. 134, 140 n.3 (1986) (noting that the facts of Pearce actually involved a different sentencing judge following remand but that "the Court did not focus on it as a consideration for its holding").  Rather, the Court suggested the blanket rule that only facts arising after an initial sentencing could justify a more severe sentence on resentencing.  Pearce, 395 U.S. at 726.

As explained by the Court in Alabama v. Smith, 490 U.S. 794 (1989), a series of subsequent rulings limited the effect of Pearce and clarified that a presumption of vindictiveness only arises where there is a "'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority."  Id. at 799 (quoting United States v. Goodwin, 457 U.S. 368, 373 (1982)).  "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness."  Id.  The parties in the present case disagree as to whether such a reasonable likelihood exists and, consequently, as to whether the government or the defendant bears the burden of proof.

Some of the Supreme Court's rulings after <u>Pearce</u> involved situations where a different judge or jury imposed the increased sentence. See <u>McCullough</u>, 475 U.S. at 140 (a fifty-year sentence imposed by a judge on retrial following a successful appeal from a twenty-year sentence was not vindictive where a jury imposed the twenty-year sentence and the second trial revealed additional evidence about the crime); <u>Chaffin v. Stynchcombe</u>, 412 U.S. 17, 28 (1973) (no presumption of vindictiveness applied where a second jury imposed a more severe sentence following a successful appeal from a first trial); <u>Colten v. Kentucky</u>, 407 U.S. 104, 119 (1972) (refusing to apply a presumption of vindictiveness in the context of Kentucky's two-tiered trial court system where a superior court judge conducting a de novo trial imposed a more severe sentence than a misdemeanor, inferior court judge had imposed in an initial trial of the same defendant). These cases, cited in <u>Smith</u>, strongly suggest that a reasonable likelihood of vindictiveness may be absent if a different sentencing judge with no stake in the initial proceedings handles resentencing.

The rule suggested by these cases makes sense because the motivation to be vindictive arises when a judge with a personal stake in the prior proceedings is "asked to do over what [her or she] thought [he or she] had already done correctly." <u>Colten</u>, 407 U.S. at 117. In <u>Colten</u>, the Court also noted that, with different sentencers, there is no more reason to presume that the second, higher sentence was motivated by vindictiveness than to presume that the initial sentence was the product of unjustified leniency. <u>Id.</u> Similarly, in <u>Chaffin</u>, the Court stated that a "jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication." 412 U.S. at 27. Finally in <u>McCullough</u>, the Court stated, "The presumption is also inapplicable because different sentencers assessed the varying sentences . . . . In such circumstances a sentence 'increase' cannot truly be said to have taken place." 475 U.S. at 140.

Other circuits have interpreted this line of cases as authority for the proposition that no presumption of vindictiveness arises when a different judge imposes a more severe sentence during resentencing and the record contains non-vindictive reasons for the more severe sentence. Macomber v. Hannigan, 15 F.3d 155, 156-57 (10th Cir. 1994); United States v. Newman, 6 F.3d 623, 630-31 (9th Cir. 1993); United States v. Cheek, 3 F.3d 1057, 1064 (7th Cir. 1993); Rock v. Zimmerman, 959 F.2d 1237, 1257 (3d Cir. 1992), overruled on other grounds by Brecht v. Abrahamson, 507 U.S. 619 (1993); United States v. Perez, 904 F.2d 142, 145-46 (2d Cir. 1990). We agree with the position adopted by these circuits. To apply a presumption of vindictiveness in such circumstances—where the second sentencer had no personal stake in the prior proceedings—would require an inference of institutionalized hostility toward the exercise of appellate rights or a collusive arrangement between judges to have one exact vindication for another. There is no evidence to suggest such a lack of professionalism among judges, and we are unwilling to make such inferences on the present facts. Here, it was the defendant's own acts following the initial sentencing that forced the original judge to recuse himself from the case and required the appointment of a substitute judge for resentencing. With that new sentencing judge came a new point of view and a new approach to the exercise of the considerable discretion afforded under 18 U.S.C. § 3553(a).

On these facts, we do not recognize a presumption of vindictiveness. Accordingly, the burden to prove actual vindictiveness rests with the defendant. Because Anderson relies on no evidence other than the fact of the longer sentence to prove vindictiveness, his arguments fail. Further, the higher sentence on remand is easily explained by the district court's permissible and clearly expressed views

unrelated to the prior appeal.[3] The more severe sentence imposed during resentencing does not violate Anderson's due process rights.

## II. Vulnerable Victims

The parties allege some confusion as to whether the district court actually applied only the two-level enhancement of U.S.S.G. § 3A1.1(b)(1) or the additional two-level enhancement of U.S.S.G. § 3A1.1(b)(2) to determine the advisory Guidelines range. Careful review of the sentencing transcript eliminates the alleged confusion. The district court identified two possible advisory Guidelines sentencing ranges, 87-108 months and 97-121 months. The court then declared the Guidelines inadequate and insufficient to address Anderson's conduct and imposed the 120-month sentence. The record clearly shows that the district court believed itself to be imposing a sentence above the advisory Guidelines range. Accordingly, the advisory Guidelines range adopted by the district court had to have an upper limit below 120 months. Had the advisory Guidelines range been 97-121 months, the sentence imposed would have been within the advisory range, and the district court would not have needed to declare the Guidelines inadequate and insufficient. Accordingly, we conclude that the district court determined the advisory Guidelines range to be 87-108 months and did not apply the additional two-level, "large number of vulnerable victims" enhancement of U.S.S.G. § 3A1.1(b)(2). That having been said, we urge all sentencing courts to eliminate any possibility of ambiguity as to their final advisory Guidelines determinations.

The Guidelines range of 87-108 months involved only the two-level enhancement of section 3A1.1(b)(1). The enhancement under subsection (b)(1)

---

[3]The transcript of the resentencing proceedings demonstrates that the district court viewed the defendant's offense as particularly underhanded and the defendant as manipulative and unremorseful.

required a finding of only one unusually vulnerable victim. Accordingly, we need not review the district court's findings that thirteen of the victims were unusually vulnerable. We also need not address the issue of how many unusually vulnerable victims are required to constitute a "large number." U.S.S.G. § 3A1.1(b)(2). Because, as explained below, we find that the district court committed no clear error in finding at least one unusually vulnerable victim, use of the two-level enhancement was appropriate. See Anderson, 349 F.3d at 571 (stating that we review the factual finding of a particular victim's unusual vulnerability for clear error).

One of the twenty-two victims of the defendant's fraudulent scheme was Juanita Butler. Ms. Butler was elderly when she invested her savings with the defendant, eighty-four years old at the time of the indictment, and has since died. Her daughter, Kathleen Sumner (also a victim of the defendant's scheme), testified at the resentencing hearing regarding Ms. Butler's education, job experience, and association with the defendant. Ms. Butler received an eighth grade education. None of her work experiences—she raised a family, milked cows on a farm, and worked as a cashier at a restaurant in a shopping mall—demonstrate an exposure to or an understanding of investments. In fact, she had no investment experience outside of her connection with the defendant. Before the defendant obtained Ms. Butler's money in the scheme that led to his convictions, he established a living trust for her. This gave him access to her personal financial information. Ms. Sumner also stated that the defendant used his role as a minister to gain Ms. Butler's trust and that Ms. Butler was a religious woman likely to place her trust in a minister. Ms. Sumner testified specifically that on one occasion she arrived at Ms. Butler's house when the defendant was presenting literature about a church to Ms. Butler. When Ms. Sumner asked the defendant about the literature, he slid it beneath other papers and refused to talk about it.

Based on the totality of Ms. Butler's abilities and circumstances, we find no clear error in the district court's determination that Ms. Butler was an unusually

vulnerable victim. In making this determination, we do not apply a blanket assumption that an advanced age is sufficient to render a victim vulnerable. Rather, we find the testimony regarding Ms. Butler's age, education, work experience, lack of investment experience, and particular susceptibility to persuasion by a church leader sufficient to support the district court's finding of unusual vulnerability.

We also find no error regarding use of the abuse-of-trust and vulnerable victim enhancements in the same case. The abuse-of-trust enhancement relates to the characteristics of the defendant and the role he served. The vulnerable victim enhancement relates to the characteristics of the victim and the susceptibility of the victim to the defendant's specific conduct. It is possible to have one enhancement without the other or to have both in the same case. See, e.g., United States v. Della Rose, 435 F.3d 735, 738 (7th Cir. 2006) (affirming as reasonable a sentence that involved a vulnerable victim enhancement and an abuse of trust enhancement); United States v. Moskal, 211 F.3d 1070, 1073-75 (8th Cir. 2000) (affirming an upward departure in a case in which the sentencing court found both a vulnerable victim enhancement under section 3A1.1(b)(1) and an abuse-of-trust enhancement under section 3B1.3 inadequate to fully address the severity of a defendant's conduct).

## III. Reasonableness

Finally, we find the sentence reasonable under Booker. The district court did not fail to consider relevant factors, give substantial weight to irrelevant factors, nor commit any identifiable clear errors of judgment in weighing the permissible factors. United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005).

The judgment of the district court is affirmed.

_____